UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
JOANNA GRYGIELKO-SANCHEZ,

                              Plaintiff,

- v. -

COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.
-----------------------------------------------------------x

OPINION & ORDER

No. 16-cv-5357 (NG)

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ DEC 0 4 2018 ★
BROOKLYN OFFICE

GERSHON, United States District Judge:

Plaintiff Joanna Grygielko-Sanchez brings this action seeking reversal of the decision of the Commissioner of Social Security ("Commissioner") denying her claim for disability insurance benefits and supplemental security income benefits under Titles II and XVI of the Social Security Act (the "SSA" or "Act"), 42 U.S.C. §§ 401 *et seq* and 1381 *et seq*. After a hearing, where plaintiff was represented by counsel before Administrative Law Judge ("ALJ") James Kearns, the ALJ concluded that plaintiff was not disabled because, though unable to perform past relevant work, she had the residual functional capacity ("RFC") to perform sedentary work, provided she may stand and shift positions for no more than five minutes per hour and is limited to performing simple and routine tasks. After the Appeals Council denied plaintiff's request for review, she timely commenced this action. Both parties now move for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). For the reasons set forth below, the Commissioner's motion is granted and the plaintiff's motion is denied.

1

## I. Background

### A. Procedural History

Plaintiff filed for benefits on December 27, 2012. Her alleged onset date is December 1, 2012.[1] Administrative Record ("AR") at 147-164, 190. Plaintiff requested a hearing before an ALJ, which occurred on February 25, 2015. The ALJ issued his opinion on June 16, 2015 denying plaintiff's claim. The Appeals Council denied plaintiff's request for review on September 12, 2016, thus rendering the decision of the Commissioner final. Plaintiff commenced this action on September 27, 2016.

### B. Plaintiff's Background and Medical Evidence Before the ALJ

Plaintiff was born on May 19, 1975, making her 37 at the time of the alleged onset date. Plaintiff completed high school and two years of college. She lives with her husband, mother, and two children. She has held jobs as a sales clerk, a housekeeper, and a server in a cafe. Until November 2012, she worked in a delicatessen and earned approximately $15,000 annually.

Plaintiff previously used the name Joanna Lucja Gonzalez, as indicated on her application for disability benefits, and held a New York State Benefits Identification Card in this name.

Plaintiff filed for disability claiming to have insomnia, anxiety, and pain in the lumber spine and bilateral hips. In her function report, dated February 17, 2013, plaintiff stated that she took Lunesta as a sleep aid, Xanax for anxiety, and Hydromorphone for pain. She stated that she was limited in her daily activities, went out of the house only for medical appointments, and that her mother performed all of the housework in her home.

---

[1] Although plaintiff initially alleged an onset date of February 28, 2012, during the administrative hearing, plaintiff's counsel agreed with the ALJ that the earliest onset date possible would be December 1, 2012 because plaintiff engaged in substantial gainful activity through November 2012.

2

On August 13, 2012, plaintiff sought treatment from Dr. Isaac Kreizman, a pain management specialist, for left hip pain and lower back pain radiating down her leg. Plaintiff complained of trouble sleeping. Dr. Kreizman administered an injection of Kenalog with Lidocaine. Motor nerve conduction studies revealed normal findings. A doppler examination found no evidence of thrombosis in the deep venous system of the lower extremities.

On October 6, 2012, plaintiff underwent Magnetic Resonance Imaging (MRI) of the lumbar spine, which found moderate broad-based midline disc herniation at L4–L5 and L4–S1. An MRI of the hips, performed on October 13, 2012, showed findings associated with femoroacetabular impingement, or decreased range of motion of the hip joint.

Plaintiff returned to Dr. Kreizman on October 22, 2012 for treatment of hip and lower back pain. Dr. Kreizman administered injections of Kenalog with Lidocaine in both hips.

Plaintiff received care from her primary care physician, Dr. Arkadiy Izrailov, an internist, in February, May, October, November, and December 2012, and March 2013. The reasons for these visits included anxiety, insomnia, and gastroesophageal reflux disease (GERD). The plaintiff's medications were Xanax for anxiety disorder, Lunesta for insomnia, and Protonix for GERD.

Dr. Kreizman completed a medical source statement on May 3, 2013, in which he reported treating plaintiff since August 13, 2012. He reported that plaintiff had no significant gait abnormalities. Dr. Keizman left blank the section of the form requesting information about medically required assistive walking devices. He opined that plaintiff could lift and carry up to 15 pounds, stand and/or walk for up to six hours per day, and had an unspecified limitation in sitting.

Plaintiff treated with Dr. Kreizman for hip, back, and neck pain on a monthly basis between January 2013 and June 2014. At most visits, Dr. Kreizman assessed lumber radiculopathy. Plaintiff received hip injections in January, February, May, and July 2013, which she reported

were helpful in relieving her pain. She received lumbar epidural injections in February, March, and April 2013, which she also found helpful. At a follow-up visit in September 2013, plaintiff noted that she felt pain when standing and walking. At visits in December 2013 and February 2014, she indicated that she had difficulty walking due to pain. Examination findings generally showed paraspinal tenderness, antalgic gait, and decreased range of motion in the lower extremities and low back. Plaintiff was prescribed Dilaudid, a topical pain reliever.

An MRI of the cervical spine on April 8, 2013 showed central disc herniations at C3–C4, C4–C5, and C6–C7, and a disc bulge at C5–C6. The test found no foraminal impingement. An MRI of the lumbar spine from the same date showed central/left paracentral disc herniation at L5–S1 with bilateral foraminal impingement and a reduction of disc signal intensity at L4–L5. An electromyography (EMG) study conducted on April 24, 2014 found evidence of bilateral L4–L5 radiculopathy.

On May 3, 2013, plaintiff underwent, at the behest of the Commissioner, a consultative evaluation with Robin Tempelman MacFarlane, Ph.D., a psychologist. Plaintiff reported difficulty sleeping, some appetite disturbance, and depression. She reported experiencing panic attacks three times per day, which limited her activities and caused her to fear going out by herself. Plaintiff stated that she could not work because she was nervous and had panic attacks. She reported taking Xanax, but stated that it did not help with her panic attacks. She also complained of pain with her daily activities, but stated that she could dress, bathe, and groom herself, cook and prepare food, clean, and do laundry. She reported that she spends her days socializing with her family. Dr. MacFarlane opined that plaintiff's difficulties in daily activities appeared to be due to pain and not to problems concentrating.

Dr. MacFarlane's evaluation included a mental status examination, during which plaintiff was cooperative and related adequately. Plaintiff demonstrated mildly impaired attention and concentration. She had adequate expressive and receptive language and clear quality of voice, and her thought processes were coherent and goal-directed. Her affect was dysphoric and mood was neutral. She could count and perform simple calculations, but could not count backward from 20 by threes. Her recent and remote memory were also mildly impaired due to anxiety. Intellectual functioning was estimated to be in the average range, and her general fund of information appeared to be appropriate to her experience.

Dr. MacFarlane concluded that the plaintiff showed no evidence of limitation in her abilities to follow and understand simple directions and instructions or to perform simple tasks independently. She determined that the plaintiff demonstrated mild to moderate limitation in her ability to maintain attention and concentration due to anxiety, but no limitation in her ability to maintain a regular schedule, learn new tasks, complete complex tasks independently, or make appropriate decisions. Dr. MacFarlane stated that the results of the examination appeared to be consistent with psychiatric problems, but that those problems did not alone appear significant enough to interfere with plaintiff's ability to function on a daily basis. Dr. MacFarlane recommended that plaintiff undergo a full psychiatric exam from a psychiatrist in addition to continuing treatment with her general practice doctor. The report also noted that plaintiff had been previously referred to a psychiatrist, but prefered to see her general practice doctor for psychiatric treatment.

On May 3, 2013, Dr. Vinod Thukral, an internist, conducted a consultative medical examination, at the behest of the Commissioner. At that examination, the plaintiff reported being involved in two motor vehicle accidents, one in approximately 2003 and the second in 2012, that

caused injuries leading to her hip, back, and neck pain, as well as her anxiety and depression. Plaintiff stated that she could shower and dress herself, but could not cook, clean, do laundry, or shop due to pain. The plaintiff declined to perform parts of the examination due to pain. However, she was able to change for the exam, get on and off the examination table, and rise from a chair without difficulty. Dr. Thukral evaluated the plaintiff's gait as normal both with and without a cane. Plaintiff demonstrated a full range of motion in the cervical spine and in the upper extremities. Dr. Thukral noted mild tenderness in plaintiff's lumbar spine. Neurological examination showed no abnormalities, and fine motor activity was intact in both hands. Dr. Thukral opined, on the basis of the examination, that plaintiff had no limitations for sitting, standing, pulling, or pushing, but had mild limitations for lifting and carrying due to lower backache.

On May 20, 2013, a non-examining State agency psychological consultant, Robert F. Lopez, Ph.D., reviewed the evidence of record and opined that, from a psychiatric standpoint, plaintiff was capable of following supervision, relating appropriately to coworkers, and performing substantial gainful activity.

Plaintiff received treatment from Dr. Izrailov for insomnia, anxiety, nasal congestion, and GERD in June, July, August, November, and December 2013. Musculoskeletal, neurological, and psychological examinations were normal. Plaintiff was prescribed Xanax for anxiety, Lunesta for insomnia, and Protonix for GERD.

On January 20, 2014, plaintiff underwent lumbar medial branch radiofrequency ablation, a procedure to treat hip pain.

Plaintiff continued treatment with Dr. Izrailov in January, March, and May 2014. Dr. Izrailov continued plaintiff's medications. Examination findings were normal.

On March 30, 2014, Dr. Izrailov completed a medical source statement indicating diagnoses of anxiety disorder, insomnia, GERD, lower back pain, and kidney stones. Dr. Izrailov stated that plaintiff did not have depression. Dr. Izrailov indicated that plaintiff was limited to occasionally lifting up to five pounds, standing and/or walking less than two hours per day, sitting up to six hours per day, and was limited in pushing and pulling. Dr. Izrailov attached several lab reports including a colonoscopy and esophagogastroduodenoscopy from February 2014, imaging of the abdomen and pelvis from December 2013, and blood tests from December 2013.

A medical source statement from Dr. Kreizman's medical practice dated June 19, 2014, notes that plaintiff was limited in lifting, carrying, standing and/or walking, sitting, pushing and/or pulling, and otherwise, but does not specify the extent of the limitations. The report states that the preparer cannot provide a medical opinion regarding plaintiff's ability to do work-related activities.

On July 3, 2014, Dr. Izrailov completed a Treating Physician's Wellness Plan Report concerning plaintiff. The report lists diagnoses of lower back pain, anxiety, and insomnia. In the functional capacity section, Dr. Izrailov indicates that plaintiff is unable to work for at least 12 months.

Plaintiff continued to treat with Dr. Izrailov on a monthly basis from June 2014 through February 2015. Dr. Izrailov continued plaintiff's medications. At visits in December 2014, January 2015, and February 2015, Dr. Izrailov performed a depression screening, in which he asked plaintiff if in the last two weeks she had been bothered by little interest or pleasure in doing things or feeling down, depressed or hopeless. Plaintiff responded "No" to both questions in all screenings.

On September 8, 2014, plaintiff received a cervical epidural steroid injection and trigger point injection in the cervical paraspinous muscles. On September 22, 2014 and December 20, 2014, she received lumbar epidural steroid and trigger point injections. Plaintiff had a follow-up evaluation on January 22, 2015 during which she reported that her pain had worsened. She rated the pain as 10/10 in her low back and 6/10 in her neck. Dr. Anson Moise, a surgeon, discussed proceeding with a surgical consultation for plaintiff's lumbar spine, but plaintiff indicated that she was not interested in surgical options and requested to repeat the lumbar epidural injections.

On February 19, 2015, Dr. Kreizman completed a medical assessment of ability to do work-related activities. He reported that plaintiff could lift and/or carry less than 10 pounds, stand and/or walk less than two hours, and sit with normal breaks periodically alternating sitting and standing in an eight-hour workday. Additionally, he reported that plaintiff was limited in her upper and lower extremities.

The record contains a medical source statement of ability to do work-related activities (mental) completed on February 19, 2015. The parties agree that Dr. Izrailov wrote this report. The report states that plaintiff has extreme limitations, which it defines as "no useful ability to function in this area," in every area of work-related mental functioning due to panic disorder, social anxiety disorder, and general anxiety disorder. The report indicates that the plaintiff can manage benefits in her own best interest.

On March 4, 2015, the ALJ submitted interrogatories and a disc containing the plaintiff's medical record to Dr. Charles Plotz, an internist. Dr. Plotz provided responses to the interrogatories on March 6, 2015. Dr. Plotz indicated that he had reviewed the evidence. Dr. Plotz opined that plaintiff's impairments limited her to sedentary work at best. He noted that the record showed that plaintiff had disc herniations in the cervical and lumbar spine, but that there was no

8

spinal impingement. He also noted that plaintiff reported that she could perform most activities of daily living including laundry and shopping. In a medical source statement of ability to do work-related activities (physical), Dr. Plotz indicated that plaintiff could lift and carry up to 10 pounds occasionally, sit four hours at a time and up to seven hours per workday, stand two hours at a time and up to two hours per workday, and walk one hour at a time and up to one hour per workday. He noted that plaintiff used a cane, but opined that it was not required to ambulate. He opined that plaintiff could never climb ladders and scaffolds, never kneel, crouch, or crawl, and could occasionally climb stairs and ramps, balance, and stoop.

### C. Vocational Expert Testimony

At the administrative hearing in this case, Ms. Miriam Greene, a vocational expert testified. Prior to the hearing, Ms. Greene had reviewed the plaintiff's work history. Ms. Greene testified that an individual who was limited to sedentary exertion levels and needed to stand up and shift positions for five minutes or less per hour could not perform the plaintiff's former job as a sales clerk for food. Ms. Greene testified that a person with these limitations could work as a "bench assembler, jewelry stone setter, and surveillance systems monitor." AR at 55. The ALJ asked if the same person, with the added limitation of requiring unscheduled breaks of one hour per day in addition to regular breaks, could find work. Ms. Greene responded, "That person could not work competitively." *Id.* The plaintiff's counsel had the opportunity to examine Ms. Greene, but did not.

### D. The ALJ Decision

At step one of the sequential analysis, the ALJ found that plaintiff had engaged in substantial gainful activity, but that such activity had ended as of December 1, 2012.

At the second step, the ALJ determined that plaintiff's degenerative changes of the lumbar spine, degenerative changes of the cervical spine, and panic disorder were severe impairments. At

9

step three, the ALJ determined that those impairments did not meet or equal the criteria of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

At step four, the ALJ concluded that plaintiff could perform sedentary work, provided she may stand and shift positions for no more than five minutes per hour and is limited to performing simple and routine tasks. In reaching this RFC, the ALJ gave great weight to the findings of Dr. Thukral and Dr. MacFarlane. The ALJ found that plaintiff's testimony was not fully credible as the findings of Dr. Izrailov, Dr. Thrukral, and Dr. MacFarlane, the EMG and MRI results, the opinion of Dr. Plotz, and plaintiff's activities of daily living all suggested greater functioning than alleged by plaintiff. Based on that RFC, the ALJ found that plaintiff could not perform her past relevant work.

At the final step, the ALJ considered plaintiff's age, education, work experience, and RFC, and relied on the testimony of a vocational expert to determine that there were jobs that existed in significant numbers in the national economy that plaintiff could perform. Accordingly, the ALJ found that plaintiff was not disabled under the SSA.

## II. Legal Standard and Scope of Review

A claimant is entitled to disability benefits if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The claimant has both "the general burden of proving that he or she has a disability within the meaning of the Act" and the specific "burden of proving his or her case at steps one through four of the sequential five-step framework established in the SSA regulations." *Cichocki v. Astrue*, 729 F.3d 172, 176 (2d Cir. 2013) (internal quotation omitted). If the claimant satisfies her burden of proving the requirements of the first

four steps, at step five of the sequential analysis, the burden shifts to the Commissioner to prove that the claimant is capable of working. *See, e.g., Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996).

A district court may set aside the Social Security Commissioner's decision only if its factual findings are not supported by substantial evidence or if the decision is based on legal error. *Burgess v. Astrue*, 537 F.3d 117, 127 (2d Cir. 2008). "Substantial evidence" is evidence "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971). In other words, a reviewing court must determine whether the ALJ's decision relied on "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion" and applied "the correct legal standards." *Burgess*, 537 F.3d at 128 (internal quotations omitted).

## III. Discussion

Plaintiff argues that the ALJ's decision must be reversed on the grounds that: (1) the ALJ failed to give controlling weight to the February 19, 2015 mental medical source statement in evaluating plaintiff's mental RFC; (2) the ALJ failed to consider the possibility of progressive deterioration of plaintiff's conditions in evaluating her physical RFC; and (3) the ALJ failed to adduce medical and vocational evidence proving she is capable of performing other jobs that exist in significant numbers in the national economy.

The ALJ's decision gave no weight to a mental medical source statement dated February 19, 2015 in evaluating the plaintiff's mental RFC "because the signature is illegible and the person opined the claimant has extreme limitations in all areas of mental functioning, which has no basis as can be seen by [Dr. MacFarlane's evaluation]." AR at 26. The Commissioner now accepts the plaintiff's position that the report was completed by Dr. Izrailov, the plaintiff's primary care physician, but argues that nonetheless, the ALJ was correct to give the opinion no weight.

11

The opinion of a treating physician is ordinarily entitled to "controlling weight," provided that it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527. Where an opinion lacks supporting evidence or is "not consistent with other substantial evidence in the record, such as the opinions of other medical experts," the weight afforded the opinion may be diminished. *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004). If the ALJ gives less than controlling weight to the treating physician's opinion, the ALJ must provide "good reasons" for doing so. *See Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015). Factors to consider include: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the supportability of the opinion; (4) the consistency with the record as a whole; and (5) the specialization of the treating physician. *Id.*

Assuming, as the Commissioner does, that the February 19, 2015 report was prepared by Dr. Izrailov, plaintiff's internist, I find no error in the Commissioner's decision not to give it controlling weight. The report states that plaintiff suffers from "extreme limitations," defined as "no useful ability to function in this area," in every area evaluated, including the abilities to "understand and remember short, simple instructions" and "make judgments on simple work-related decisions." AR at 527. However, Dr. Izrailov's own treatment notes consistently indicate normal psychological findings. Records from January and February 2015 indicate that plaintiff denied depression, was "alert and oriented," and displayed "appropriate mood and affect." Thus Dr. Izrailov's long-term observations of the plaintiff—which plaintiff argues are grounds for giving Dr. Izrailov's report great weight—are inconsistent with his February 19, 2015 report. *See Flanigan v. Colvin*, 21 F.Supp.2d 285, 305 (S.D.N.Y. 2014) (affirming ALJ's assignment of no

weight to a treating physician's opinion contradicted by the record including the physician's own contemporaneous treatment records).

The report is also inconsistent with all other psychological assessments in the record. Dr. MacFarlane's May 2013 evaluation found no evidence of limitation in plaintiff's abilities to follow and understand simple directions and instructions, perform simple tasks independently, maintain a regular schedule, learn new tasks, complete complex tasks independently, or make appropriate decisions. Dr. Lopez found that plaintiff could follow supervision and relate appropriately to coworkers. Although Dr. MacFarlane and Dr. Lopez provided consultative opinions, as psychologists, their opinions in their area of expertise may be given more weight than a non-specialist. 20 C.F.R. § 404.1527(c)(5). Dr. Izrailov is not, as plaintiff argues, "uniquely qualified to address the [plaintiff's] psychological issues." Pl. Br. at 12. As an internist, Dr. Izrailov is a non-specialist in psychology and psychiatry. Finally, in considering the plaintiff's alleged mental impairments, it is relevant to note that plaintiff consistently declined to seek specialist mental treatment, although she was referred to a psychiatrist. *Cf. Mahoney v. Apfel,* 48 F.Supp.2d 237, 246 (E.D.N.Y. 1999) ("[T]he ALJ is permitted to attach significance to plaintiff's failure to seek medical treatment.") (citations omitted).

To the extent that plaintiff argues the ALJ should have assigned more than "no weight" to the February 19, 2015 report, this argument is unavailing. "Remand for agency reconsideration is unnecessary where, as here, application of the correct legal principles to the record could lead only to the same conclusion." *Bavaro v. Astrue,* 413 F. App'x 382, 384 (2d Cir. 2011) (internal quotations and alteration omitted)). Given the report's inconsistency with all other evidence on the record concerning the plaintiff's psychological capacity, even if the ALJ had assigned the opinion some weight, this would not have altered the finding regarding plaintiff's mental RFC.

The plaintiff's second objection challenges the ALJ's finding that plaintiff retained the RFC to perform sedentary work with limitations. Sedentary work is work that "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." 20 C.F.R. § 404.1567(a). Plaintiff argues that the ALJ did not adequately account for the progressive worsening of her conditions. But the record did not require the ALJ to conclude that there was a pattern of deterioration. In fact, the ALJ's conclusion is largely consistent with the most recent opinion of Dr. Kreizman, plaintiff's pain management specialist since August 2012. The only divergence between the two is that Dr. Kreizman opined that plaintiff could lift and carry less than 10 pounds, while the ALJ found that the plaintiff could lift up to 10 pounds. Dr. Kreizman's reports vary regarding plaintiff's ability to lift and carry. In a previous report, Dr. Kreizman had opined that plaintiff could lift and carry up to 15 pounds.[2] The ALJ is entitled to resolve inconsistencies. In addition to Dr. Kreizman's report, the ALJ had reports from plaintiff's internist and a consulting internist, Dr. Thukral, each of whom described only limited physical impairments. Moreover, the ALJ relied on the opinion of the medical expert who reviewed the complete longitudinal record, including MRI and EMG studies, treatment records, and medical opinions. Accordingly, substantial evidence supports the ALJ's physical RFC finding.

Plaintiff's third objection is in essence an argument that the ALJ failed to meet his burden at step five of the sequential analysis. At this step, the ALJ considers factors such as the claimant's age, education, and past work experience to determine whether the claimant can perform other jobs existing in significant numbers in the national economy.

---

[2] The ALJ gave no weight to a third, June 19, 2014 report from Dr. Kreizman's office because it is unclear who authored the opinion. As the report provided no specific information and states that the preparer "cannot provide a medical opinion regarding plaintiff's ability to do work-related activities," AR 343, I do not fault the ALJ for assigning no weight to this report.

Substantial evidence supports the ALJ's finding that plaintiff can perform other jobs. A vocational expert testified to the existence of three jobs available in significant numbers in the national economy that a person with the plaintiff's RFC can perform. The ALJ was entitled to credit that testimony. 20 C.F.R. § 404.1566(e).

Finally, although plaintiff does not challenge the ALJ's finding that her testimony was not fully credible, I have considered this finding and conclude that it is adequately supported by the record. Plaintiff testified that she could not work because of pain, insomnia, and anxiety. Plaintiff's testimony about the intensity of her pain and her activities of daily living indicates a level of incapacitation that is not otherwise reflected in the record. This testimony contradicts earlier statements the plaintiff made to healthcare providers and the objective findings of the plaintiff's treating physicians. Accordingly, I conclude that the record adequately supports the ALJ's decision.

## IV. Conclusion

For the foregoing reasons, the Commissioner's motion is granted and the plaintiff's motion is denied. The Clerk of Court is directed to enter judgment in favor of the defendant.

SO ORDERED.

/s/ Nina Gershon
**NINA GERSHON**
**United States District Judge**

Dated: December 3, 2018
Brooklyn, New York